Present:  All the Justices

EMILY KATHERINE JAMES, BY MOTHER
AND NEXT FRIEND, JOY L. DUNCAN, ET AL.

v.  Record No. 011448

DOUGLAS WILLIAM JAMES

OPINION BY
CHIEF JUSTICE HARRY L. CARRICO
April 19, 2002

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

This appeal involves issues resulting from the entry of two nonsuit orders and the subsequent imposition of contempt penalties and monetary sanctions, including the dismissal with prejudice of the two motions for judgment ostensibly nonsuited. The motions for judgment were filed May 4, 1999, one on behalf of Emily Katherine James and the other on behalf of Mary Elizabeth James, infants then aged twelve and nine years, respectively, by their mother and next friend, Joy L. Duncan (Duncan).  The motions for judgment sought damages for emotional and physical injuries allegedly inflicted upon the infants by their father, Douglas William James (James).[1]  James filed grounds of defense denying liability for the infants' alleged injuries.

---

[1] The record shows that Duncan and James were married June 28, 1986, and that they were divorced by final decree entered August 23, 1994.  The decree affirmed, ratified, and incorporated a written agreement entered into between Duncan and James which provided that Duncan "shall have custody of the infant children born of the marriage."

On March 1, 2000, James filed motions for an independent medical examination of the infants. On May 22, 2000, the trial court entered orders requiring that the infants submit to examination by two doctors named in the orders "on dates to be determined . . . within 6 weeks after the last date of school classes." The orders also provided that Duncan, "as next friend, shall deliver the infant plaintiff[s] to the examiner on the date and time ordered herein."

On June 9, 2000, James' counsel notified Duncan's counsel by letter of the available dates for the independent examination. In addition, numerous telephone calls were made to Duncan's counsel requesting that the infants be produced for the independent examination. Duncan's counsel failed to respond.

On July 28, 2000, James filed in each case a motion to sanction Duncan pursuant to Rule 4:12(b)(2) for her failure to obey the trial court's orders of May 22, 2000, requiring the independent examination of the infants.[2] James also gave Duncan notice that the motions for sanctions would be heard on November 6, 2000.

On October 30, 2000, acting pro se following the withdrawal of her counsel, Duncan filed motions to nonsuit both cases. On

---

[2] Rule 4:12(b)(2) provides that the court in which an action is pending may make such orders as are just in regard to the failure of a party to obey an order to provide or permit

2

October 31, 2000, the trial court entered an order in each case noting Duncan's motion for nonsuit and ordering that "this action stand dismissed without prejudice."

On November 3, 2000, Duncan sent James' counsel a note stating she would be unable to attend the hearing on November 6 and asking for a rescheduled date because her son had a medical appointment at a hospital. On November 6, counsel for James appeared for the hearing, but Duncan did not. The trial judge noted that Duncan had requested a continuance because of her son's illness, but, without granting or denying the motion for continuance, proceeded with the hearing in Duncan's absence.

The trial judge asked counsel for James "[w]here [he] want[ed] to go [that day]." Noting that "we are within the 21-day period from [the court's] entry of the [nonsuit orders]," counsel replied that he "would ask [the court to] enter an order requiring [Duncan] to show cause why she's not in contempt of [the court's] two orders [requiring independent examination of the infants]."

Later on in the discussion, James' counsel asked the court to "set [the nonsuit orders] aside pending a hearing on the matter." At one point, the trial judge stated that he would "set aside the order[s] of nonsuit and continue to hold that in

discovery. Five categories of permissible sanctions are provided.

3

abeyance until all the matters are heard." Immediately, however, James' counsel stated that if, within the 21-day period following entry of the nonsuit orders, he obtained an order requiring Duncan to show cause why she should not be held in contempt, the court would not "really need to set aside the nonsuit"; counsel "won't really care about that." The trial judge instructed counsel to "get [him] the order right away."

On November 8, 2000, within the 21-day period following entry of the nonsuit orders, the trial court entered two orders with respect to the November 6 hearing. The nonsuit orders were not mentioned in either of the November 8 orders. Rather, the November 8 orders merely required Duncan to appear on December 21, 2000, to show cause why she should not be held in contempt and further provided as follows:

> 4. This matter is continued on the Court's docket to the 21[st] day of December, 2000, at 9:30 a.m. at Powhatan Courthouse.

> 5. This matter continues on the docket.

On December 21, 2000, Duncan appeared with counsel, and the trial court conducted a hearing on the rule to show cause issued against Duncan in each case. On January 25, 2001, the court entered an order finding Duncan in contempt and taking under advisement the imposition of punishment and sanctions until each party filed a chronology of events. Following receipt of the chronologies, on April 4, 2001, the court entered a final order

4

in each case sentencing Duncan to pay a fine of $1,000.00 and to serve 30 days in jail, with the jail sentence suspended on condition that she be of good behavior and pay to James' counsel the sum of $20,000.00 in attorney's fees.[3]  The court also dismissed with prejudice the motion for judgment filed in each case.  We awarded Duncan this appeal.

At this point, the Court finds itself faced with an anomaly.  Duncan asks the Court to reverse the trial court's finding that she is in contempt for failure to obey orders requiring her to produce other persons for independent medical examination.  Rule 4:12(b)(2)(D) permits a court to treat a failure to obey a discovery order as contempt, "except an order to submit to a physical or mental examination," and Rule 4:12(b)(2)(E) precludes a court from treating a failure "to produce another for examination" as contempt.  Yet, Duncan cited neither rule in the trial court, cited only Rule 4:12(b)(2)(D) in her petition for appeal to this Court, and cited neither rule in the brief she filed here.  Hence, she has waived the right to rely on either rule.  Rule 5:25.

Nevertheless, Duncan questions whether the trial court had jurisdiction to consider her alleged violations of the discovery

---

[3] The order entered in one of the cases stated that "the jail sentence, the fine and the attorney's fees herein are not cumulative to those ORDERED in the [other] case, . . . but shall run concurrently."

5

rules after the expiration of the twenty-one day period following entry of the orders of nonsuit.[4]  We resolve this question by focusing upon the nonsuit orders and the provisions of the nonsuit statute, Code  § 8.01-380, and Rule 1:1.  At the time the nonsuit orders were entered, Code § 8.01-380 provided as follows:

> A. A party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision. . . .

> B. Only one nonsuit may be taken to a cause of action or against the same party to the proceeding, as a matter of right, although the court may allow additional nonsuits or counsel may stipulate to additional nonsuits.  The court, in the event additional nonsuits are allowed, may assess costs and reasonable attorney's fees against the nonsuiting party.

> C. A party shall not be allowed to nonsuit a cause of action, without the consent of the adverse party who has filed a counterclaim, cross claim or third-party claim which arises out of the same transaction or occurrence as the claim of the party desiring to nonsuit unless the counterclaim, cross claim, or third-party claim can remain pending for independent adjudication by the court.[5]

---

[4] James argues on brief that Duncan did not properly preserve the question of jurisdiction.  He charges Duncan has changed the language of an assignment of error and has raised issues before this Court not encompassed in either her assignments of error or her petition for appeal.  Our examination discovers none of these defects, and we reject James' argument.

[5] A 2001 amendment added to Code § 8.01-380 a new subsection C and redesignated former subsection C as subsection D.  The new subsection provides for the assessment against the nonsuiting party of certain fees and costs incurred by the opposing party

6

Rule 1:1 provides in pertinent part that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

We have not previously considered whether a nonsuit order is a final judgment, order, or decree for purposes of Rule 1:1. In several cases, however, we have said that a nonsuit order is not a final judgment for appeal purposes unless a dispute exists whether the trial court properly granted the motion for nonsuit. Swann v. Marks, 252 Va. 181, 184-85, 476 S.E.2d 170, 172 (1996); McManama v. Plunk, 250 Va. 27, 32, 458 S.E.2d 759, 761 (1995); Mallory v. Taylor, 90 Va. 348, 349, 18 S.E. 438, 439 (1893); see Wells v. Lorcom House Condo. Council, 237 Va. 247, 251, 377 S.E.2d 381, 383 (1989).

Here, no dispute exists whether the trial court properly granted the motions for nonsuit filed by Duncan, so the nonsuit orders would not qualify as final judgments for appeal purposes. However, it does not necessarily follow that the nonsuit orders are also disqualified as final judgments for purposes of Rule 1:1.

---

if notice to take a nonsuit of right is given to the opposing party within five days of trial. 2001 Va. Acts ch. 825.

Generally speaking, a final order for purposes of Rule 1:1 "is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." Daniels v. Truck & Equipment Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964) (citations and inner quotation marks omitted).

We are of opinion that, from its very nature, an order granting a nonsuit should be subject to the provisions of Rule 1:1, with or without the existence of a dispute over the propriety of granting the nonsuit. A plaintiff has an absolute right under Code § 8.01-380 to one nonsuit. Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984). "The election is his and if he insists upon taking the nonsuit within the limitations imposed by the statute, neither the trial court nor opposing counsel can prevent him from doing so."[6] Id. Furthermore, when a court enters a nonsuit order, the case becomes "concluded as to all claims and parties," and "nothing remain[s] to be done." Dalloul v. Agbey, 255 Va. 511, 515, 499 S.E.2d 279, 282 (1998). Hence, the concept of nonsuit is sufficiently imbued with the attributes of finality to satisfy the requirements of Rule 1:1.

---

[6] None of the limitations imposed by Code § 8.01-380 is applicable to the present case.

Absent some badge of finality, a nonsuit order would be left hanging in the balance, with unintended results. As noted in Wells, supra, the nonsuit statute contains a number of limitations on a party's absolute right to take a voluntary nonsuit, and if a nonsuit is allowed in violation of those limitations, appellate review must be available to correct the error. 237 Va. at 251, 377 S.E.2d at 383. The same considerations apply to Rule 1:1. If such a violation occurs, a trial court should have the opportunity provided by Rule 1:1 to correct the error.

Here, as noted previously, each of the trial court's orders of November 8, 2000, although entered within the 21-day period following entry of the nonsuit orders, merely required Duncan to appear on December 21, 2000, to show cause why she should not be held in contempt and then provided that the matter was continued on the trial court's docket. The November 8 orders were completely ineffective to vacate or suspend the nonsuit orders within the intendment of Rule 1:1. "The running of time under [Rule 1:1] may be interrupted only by the entry, within the 21-day period after final judgment, of an order suspending or vacating the final order." Berean Law Group, P.C. v. Cox, 259 Va. 622, 626, 528 S.E.2d 108, 111 (2000) (quoting School Bd. of the City of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556, 379 S.E.2d 319, 323 (1989)); see also Super Fresh Food

9

Markets of Virginia, Inc. v. Ruffin, No. 011230, slip op. at 11 (April 19, 2002) (order entered after entry of final judgment but within twenty-one days and stating trial court "shall retain jurisdiction" over action until it ruled on motion for reconsideration held ineffective to extend period of trial court's jurisdiction because order did not modify, vacate, or suspend final judgment).[7]

Duncan maintains that once the 21-day period expired without the entry of orders suspending or vacating the nonsuit orders, the trial court lost jurisdiction to take the actions that followed and each action was a mere nullity. James argues on the other hand that the trial court retained jurisdiction after entry of the nonsuit orders for consideration of pending motions and enforcement of its prior orders by contempt.[8]

We have not found any decision directly on point involving the question whether a trial court retains post-nonsuit jurisdiction to consider pending motions and enforcement of its prior orders. We have found several decisions involving the

---

[7] We also said in Super Fresh that an order which both renders judgment and "retains jurisdiction to reconsider the judgment or to address other matters still pending," is not a final order under Rule 1:1 and does not commence the running of the 21-day period. Slip Op. at 7-8 (distinguishing Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 455 S.E.2d 712 (1995)).

[8] Code § 18.2-456, related to "[c]ases in which courts and judges may punish summarily for contempt," is not at issue in this case.

10

interplay between the 21-day rule and orders imposing sanctions that we consider highly persuasive, if not well-nigh conclusive.

With respect to James' argument concerning pending motions, we assume he refers to his motions for sanctions, which were pending on the twenty-first day following entry of the nonsuit orders. However, we have said that "[n]either the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, nor the pendency of such motions on the twenty-first day after final judgment, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1." Berean Law Group, 259 Va. at 626, 528 S.E.2d at 111 (emphasis added).

With respect to James' argument concerning the trial court's retention of jurisdiction to enforce its prior orders, we assume James refers to the orders requiring Duncan to produce the infants for independent medical examination. However, in Murray v. Hadid, 238 Va. 722, 385 S.E.2d 898 (1989), final judgment was entered on May 4, 1988, and the trial court heard the appellant's motion for sanctions on May 26, 1988, more than twenty-one days after entry of final judgment. The trial court denied the motion for sanctions. We approved the denial, stating that "after twenty-one days elapsed [following entry of final

judgment], the trial court no longer had jurisdiction over the matter."  Id. at 733, 385 S.E.2d at 905.

Similarly, in Smith v. Stanaway, 242 Va. 286, 410 S.E.2d 610 (1991), final judgment was entered in favor of the defendant on September 18, 1990.  Within twenty-one days, on September 25, 1990, the defendant filed a motion for sanctions, and on October 24, 1990, well past the twenty-one day period, the trial court awarded sanctions. We reversed, stating as follows:

> [T]he September 18 order was final [and this] means that the trial court was without jurisdiction to enter the October 24 order of sanctions.  Rule 1:1 provides that final judgments remain under the control of the trial court for only 21 days unless modified, vacated, or suspended during that time. . . .
>
> Consequently, we will annul the award of sanctions and dismiss the appeal as improvidently awarded.

Id. at 289-90, 410 S.E.2d at 612.

We agree with Duncan that once the twenty-one day period expired in this case without the entry of orders vacating or suspending the nonsuit orders, each action of the trial court taken thereafter was a nullity.  See Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996) (after expiration of 21-day period following entry of final judgment, trial court was divested of jurisdiction and each

12

action taken thereafter to alter or vacate final order was a nullity).

But, James argues, this view of the matter overlooks this Court's decision in Eddens v. Eddens, 188 Va. 511, 50 S.E.2d 397 (1948). There, James says, we recognized the inherent power of a court to punish a party in a contempt proceeding for a willful refusal to obey a lawful decree despite the fact that the decree had become final. Id. at 521, 50 S.E.2d at 402.

Eddens is inapposite because it involved an entirely different legal and factual setting. The case involved the use in a divorce case of a rule requiring a husband to show cause why he should not be held in contempt for his failure to pay an outstanding obligation for court costs and attorney's fees awarded the wife in the final decree of divorce entered ten years previously. We said this late use of the trial court's inherent power was proper because the rule to show cause was "ancillary to and in support of the divorce suit and its decrees." Id.

Here, once the nonsuit orders became final upon expiration of the 21-day period, there was nothing to which a rule to show cause could be ancillary or of which it could be supportive. At that point, no outstanding obligation existed, the motions for judgment brought on behalf of the infants had been dismissed,

13

the orders for independent medical examination had been superseded, the cases had been "concluded as to all claims and parties," and "nothing remained to be done." Dalloul, 255 Va. at 515, 499 S.E.2d at 282.

Because the trial court lost jurisdiction to take the actions that followed the expiration of the 21-day period after entry of the nonsuit orders, we will reverse the judgment appealed from, reinstate the nonsuit orders, and enter final judgment in favor of Duncan.

Reversed and final judgment.