COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


VICTORIA IPSEN

                                                              OPINION BY
v.        Record No. 0173-06-2              JUDGE ELIZABETH A. McCLANAHAN
                                                              APRIL 10, 2007
NATHAN ROGER MOXLEY


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           Herbert C. Gill, Jr., Judge

          William T. Fitzhugh (Bowen, Champlin, Carr, Foreman &
          Rockecharlie, on briefs), for appellant.

          Denis C. Englisby (Englisby, Englisby, Vaughn & Englisby, on
          brief), for appellee.


      Victoria Ipsen (wife) appeals the circuit court's decision that Nathan Roger Moxley

(husband) owes her no duty of child or spousal support. Wife contends the trial court erred in

finding: (1) that a juvenile and domestic relations district court order awarding child and spousal

support was nullified by a subsequent *pendente lite* support order entered in husband's suit for

divorce, which he later voluntarily nonsuited; and (2) that laches barred husband's claim that he

owes no support. For the following reasons, we reverse the judgment of the circuit court, and

remand for a determination of the child and spousal support that is owed to wife.

                                    I.  BACKGROUND

      On appeal, we view the evidence and all reasonable inferences in the light most favorable

to husband. See Martin v. Bales, 7 Va. App. 141, 142, 371 S.E.2d 823, 824 (1988). The parties

married in 1980, had three children (born in 1982, 1984 and 1993), and separated in 1997. On

April 13, 1998, the district court awarded wife child and spousal support. The parties did not appeal this ruling.

In October 1998, husband filed an action for divorce in the circuit court for the County of Chesterfield. On July 23, 1999, the circuit court granted wife's request for *pendente lite* child and spousal support effective as of February 1, 1999.[1] Husband subsequently moved for a voluntary nonsuit of the action, which the circuit court granted by order dated January 8, 2000.

Later in 2000, wife filed her own suit for divorce. The parties were divorced by final decree dated February 21, 2002. The decree noted, "[t]his Court takes no jurisdiction of the matters of child custody, child support, or spousal support as those matters are being resolved in the Chesterfield Juvenile and Domestic Relations District Court." The parties endorsed the decree without exception.

Following the nonsuit of husband's divorce action in 2000, the parties continued to appear before the district court to amend or enforce the district court's April 13, 1998 support order. Husband sought to reduce or abate his obligations while wife sought to enforce the order. Husband filed three separate motions to amend his support obligations under the order: March 30, 2001 (abate child support), June 9, 2001 (abate child support and recalculate remaining child support and spousal support), and October 21, 2002 (abate child support). The district court held various hearings on the motions and continued the case numerous times. At a show cause hearing on August 20, 2001, the district court found that husband ceased making support payments as of November 1, 2000, and was four months in arrears on those payments. On October 29, 2001, the district court again ruled that husband was in arrears on his support obligations. On December 23, 2003, the district court ultimately denied husband's pending

---

[1] The district court awarded wife child support of $1,830 per month and spousal support of $1,070 per month. The circuit court's *pendente lite* award ordered husband to pay $1,334.56 per month in child support but continued the spousal support at $1,070 per month.

motions to amend his support obligations and ordered the matter stricken from the docket, except with respect to the show cause against husband for failure to pay support. Husband appealed this ruling.

On appeal to the circuit court, husband argued that the circuit court's 1999 *pendente lite* support order nullified the district court's 1998 support order and divested that court of jurisdiction pursuant to Code § 20-79.[2] The trial court agreed, ruling that husband owed wife no child or spousal support. The court reasoned that, by entering the *pendente lite* support order, the circuit court "assumed full jurisdiction over the issues of child and spousal support and [its order] irrevocably superseded all previous district court orders." The court further stated that husband's subsequent nonsuit of the divorce action "terminat[ed] the efficacy of any [o]rder in place during the pendency of the matter" and no statute "permits a court to rehabilitate a superseded order." The court thus held that there was no support order in effect after the nonsuit and that, accordingly, husband had paid to wife all of the support the law required. This appeal followed.

---

[2] Code § 20-79(a) provides as follows:

> In any case where an order has been entered under the provisions of this chapter, directing either party to pay any sum or sums of money for the support of his or her spouse, or concerning the care, custody or maintenance of any child, or children, the jurisdiction of the court which entered such order shall cease and its orders become inoperative upon the entry of a decree by the court or the judge thereof in vacation in a suit for divorce instituted in any circuit court in this Commonwealth having jurisdiction thereof, in which decree provision is made for support and maintenance for the spouse or concerning the care, custody or maintenance of a child or children, or concerning any matter provided in a decree in the divorce proceedings in accordance with the provisions of § 20-103.

Code § 20-103 gives a court the authority to provide temporary child and spousal support during, *inter alia*, the pendency of divorce proceedings.

## II. ANALYSIS

Wife does not dispute that the circuit court's *pendente lite* support order divested the district court of jurisdiction under Code § 20-79. Wife argues, however, that husband's nonsuit of the circuit court divorce proceeding, in which that temporary order was entered, effectively restored the authority of the district court's 1998 support order. Wife contends the circuit court therefore erred in holding husband owed her no duty of child or spousal support. We agree.[3]

### A.

This case presents a question of law involving the interpretation and application of Code § 20-79. We thus "review the trial court's judgment *de novo*." Colbert v. Commonwealth, 47 Va. App. 390, 394, 624 S.E.2d 108, 110 (2006); see Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) ("[W]e review the trial court's statutory interpretations and legal conclusions *de novo*." (citation and internal quotation marks omitted)).

Pursuant to the express terms of Code § 20-79, the district court's jurisdiction did "cease" and its 1998 support order became "inoperative" upon entry of the circuit court's *pendente lite* support order. The dispositive issue in this case, however, is whether the district court's jurisdiction over support, and the operation of its support order, ended *permanently* with the entry of the circuit court's *pendente lite* order, or rather ended only *temporarily*, having been revived by the subsequent nonsuit of the divorce proceeding. Given the temporary nature of a *pendente lite* support order, the effect of a voluntary nonsuit in returning the parties to status quo, and the discernible legislative intent, we conclude that the district court's jurisdiction and the operation of its support order automatically resumed, by operation of law, upon the termination of the divorce proceeding by the nonsuit order.

---

[3] Because we decide this case in wife's favor on this ground, we do not address wife's other argument that laches barred husband's defense.

Code § 20-79 does not define the term "cease," or the term "inoperative." Nor does the statute otherwise set forth in specific terms the duration that the district court's jurisdiction over support shall "cease," or the duration that its existing support orders are to remain "inoperative," upon entry of a circuit court decree providing for support in a divorce proceeding. We thus turn to settled principles of statutory construction for guidance. "We give the words of a statute 'their common, ordinary and accepted meaning,' absent an indication by the legislature to the contrary . . . ." Germek v.Germek, 34 Va. App. 1, 8, 537 S.E.2d 596, 600 (2000) (quoting Gen. Trading Corp. v. Motor Vehicle Dealer Bd., 28 Va. App. 264, 268, 503 S.E.2d 809, 811 (1998)). We are also required to "view the entire body of legislation and the statutory scheme to determine the true intention of each part. In interpreting a statute, the Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed." M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 181-82, 583 S.E.2d 761, 766-67 (2003) (citations and internal quotation marks omitted). Under a similar principle, "'[s]tatutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*, and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times.'" Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957) (quoting Mitchell v. Witt, 98 Va. 459, 461, 36 S.E. 528, 528 (1900)).

Ultimately, "'[t]he proper course [in] all [statutory construction] cases is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objectives of the legislature.'" Colbert, 47 Va. App. at 394-95, 624 S.E.2d at 110 (quoting Jones v. Rhea, 130 Va. 345, 372, 107 S.E. 814, 823 (1921)). In doing so, "we must, as far as possible, place ourselves in the light that [the legislature] enjoyed, looking at things as they appeared to it,

and discover its purpose from the language used in connection with attending circumstances."

Franklin and Pittsylvania Ry. Co. v. Shoemaker, 156 Va. 619, 623, 159 S.E. 100, 102 (1931)

(citations and internal quotation marks omitted).

B.

Under generally accepted definitions of the two subject terms, both may be used in

reference to either a temporary or permanent duration. The word "cease" means "[t]o stop,"

"suspend," or "bring to an end." Black's Law Dictionary 237 (8th ed. 2004); see also American

Heritage College Dictionary 224 (3d ed. 1997) (defining "cease" to include "pause"); Webster's

Third New International Dictionary 367 (1993) (defining "cessation" as "a temporary or final

ceasing or discontinuance"). The word "inoperative" is defined as "[h]aving no force or effect,

or "not operative." Black's Law Dictionary, *supra*, at 806.

In other parts of the Code, the word "cease" is used in a wide variety of contexts, many of

which are descriptive of temporary conditions or requirements, as well as, to a lesser extent,

those that are permanent.[4] The word "inoperative," on the other hand, is not widely used in the

---

[4] See, e.g., Code §§ 1-401 and 1-407 (Where the Commonwealth has "ceded" exclusive jurisdiction to the United States government over property located in the Commonwealth that was acquired by the United States government, the "exclusive jurisdiction shall cease" as to any such property that is leased. At that time "the Commonwealth and the United States government shall have concurrent jurisdiction over the property so long as the lease continues." However, "[a]t the termination of the lease the jurisdiction of the Commonwealth shall cease and the United States shall [again] have exclusive jurisdiction thereof."); Code § 2.2-1839.1(E) (medical malpractice coverage available for "[p]hysicians who cease to practice in Virginia because of retirement [or] disability"); Code § 5.1-7 (In the case of an airport that does not meet certain licensing standards, "[s]hould such airport cease to be open to the public for one year, and subsequently reopen," compliance with licensure standards will be required.); Code § 10.1-1144 (owner of saw mill is required to take certain safety measures regarding burning debris when mill "ceases to operate for a period of ten consecutive days"); Code § 13.1-754 (upon certain conditions, State Corporation Commission may reinstate a corporation "that has ceased to exist"); Code § 45.1-161.93(B) (mine operator who has received notice of violation may be required "to cease the operation of the mine at which such violation exists until the violation has been abated"); Code § 45.1-161.222(B) (Underground mining operations "shall cease" in the event "one percent or more methane is present in a working place or an intake air course . . . .

Code. Where it is used, however, the context is generally one in which an "inoperative" object

may again become operative. Otherwise, it is used in a way that is not necessarily descriptive of

a permanent condition.[5]

Under the applicable statutory scheme, the district and circuit courts are vested with

concurrent jurisdiction over matters of child and spousal support. See Code § 16.1-241(A)(3)

and -241(L); Code § 16.1-244(A); and Code § 20-79.

> Orders of the district court requiring support of a [child or] spouse
> remain in full force and effect until reversed or modified by the
> court to which an appeal has been perfected, or until the entry of a
> decree in a suit for divorce instituted in a circuit court, in which
> decree provision is made for [child or] spousal support.

Martin, 7 Va. App. at 145-46, 371 S.E.2d at 826 (circuit court decree silent on support does not

affect validity of district court support order (citing Code § 20-79; Werner v. Commonwealth,

---

Changes or adjustments shall be made to the ventilation system to reduce the concentration to below one percent.").

Cf. Code § 8.9A-307 (For purposes of perfecting a security interest, a debtor "that ceases to exist . . . continues to be located in the jurisdiction" where he had established his principal residence.); Code § 13.1-721(A) (upon corporate merger, "entity that is merged into the survivor ceases"); Code § 15.2-5366 (when public hospital authority is being dissolved, its "authorities, powers and duties to transact business or to function shall cease to exist as of the date set forth in the order of the court"); Code § 17.1-130 ("Every judgment, decree or order entered in a court which has ceased to exist shall be executed by the court in the custody of whose clerk the record of such judgment, decree or order may be."); Code § 58.1-3710 (No local license tax based on gross receipts shall be imposed on a person, firm or corporation "for any fraction of a year during which such person, firm or corporation has permanently ceased to engage in [the subject] business, trade, profession, occupation or calling within the county, city or town."); Code § 59.1-337(A) (misappropriation of trade secret may be enjoined, but "injunction shall be terminated when the trade secret has ceased to exist").

[5] See, e.g., Code § 15.2-904(B) (screening requirements where landowner is "restoring or repairing" an "inoperative motor vehicle"); Code § 24.2-642 (procedures for the "repair" of a voting machine that "becomes inoperative"); Code § 46.2-1050 (muffler on a motorcycle shall not be "render[ed] inoperative . . . other than for purposes of maintenance, repair or replacement"); Code § 46.2-1151 (weight limits for vehicles designed for "towing disabled inoperative vehicles"); Code § 52-8.4:2 ("inoperative" brakes designated as a traffic infraction); Code § 55-225.4(A) (tenant shall not "render the smoke detector inoperative"); Code § 55-305 (where cattle guard is "rendered inoperative by inclement weather," easement owner must provide an "alternative method sufficient to turn livestock from the inoperative cattle guard until such cattle guard is rendered operative again").

212 Va. 623, 624, 186 S.E.2d 76, 77-78 (1972))); see also Reid v. Reid, 24 Va. App. 146, 151, 480 S.E.2d 771, 773 (1997) (same).

Code § 20-103, which is incorporated in Code § 20-79(a) by reference,[6] provides for *pendente lite* support decrees. Accordingly, district court support orders may be modified by circuit court *pendente lite* support decrees in divorce proceedings, as presented in the instant case. Upon such modification, the district court's "jurisdiction . . . shall cease and its orders become inoperative" regarding the issue of support. Code § 20-79(a). However, modification of a district court support order by a circuit court's subsequent *pendente lite* support decree is fundamentally different than modification effected by a circuit court's final decree on the merits. Unlike provisions providing for child or spousal support in a final divorce decree, support under a *pendente lite* decree, pursuant to Code § 20-103, is only temporary. As this Court explained in Smith v. Smith, 4 Va. App. 148, 151, 354 S.E.2d 816, 818 (1987), "Code § 20-103 provides authority for the court to provide for spousal support 'during the pendency of the suit.' We interpret this grant of authority to be limited to the right to make such award only for the period the action is pending . . . ." In addition, subsection E of Code § 20-103 provides that "[a]n order entered pursuant to this section shall have no presumptive effect and shall not be determinative when adjudicating the underlying cause." See Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) ("[A]n award of *pendente lite* support in a suit between parties is an interlocutory order that does not adjudicate the principles of a cause and is therefore not appealable." (citing Beatty v. Beatty, 105 Va. 213, 53 S.E. 2 (1906))).

Here, the circuit court did not adjudicate the underlying support issues in husband's divorce action because he took a voluntary nonsuit, ending the pendency of that suit. At that time the *pendente lite* support decree also terminated as it was only temporary—a decree made

---

[6] See *supra*, note 2.

for the period the action was pending without adjudicating the underlying cause.  See Smith, 4

Va. App. at 151, 354 S.E.2d at 818 (explaining that "the order of dismissal by operation of law

terminated [appellant's] right to further *pendente lite* support").  Moreover, the effect of husband

exercising his right, pursuant to Code § 8.01-380, to voluntarily nonsuit the divorce action was to

"leave[ ] the situation as if the suit had never been filed."[7]  R. P. Davis, Annotation, Effect of

Nonsuit, Dismissal, or Discontinuance of Action on Previous Orders, 11 A.L.R.2d 1407 at *3

(2004).  See Ford Motor Co. v. Jones, 266 Va. 404, 406, 587 S.E.2d 579, 580 (2003) (explaining

that "Code § 8.01-380 permits a plaintiff to take one nonsuit as a matter of right" if the

provisions of the statute are met).[8]  As stated in James v. James, 263 Va. 474, 562 S.E.2d 133

(2002), "when a court enters a nonsuit order, the case becomes 'concluded as to all claims and

parties,' and 'nothing remains to be done.'"  Id. at 481, 562 S.E.2d at 137 (quoting Dalloul v.

Agbey, 255 Va. 511, 515, 499 S.E.2d 279, 282 (1998)).[9]

This Court has already recognized that this statutory scheme contemplates the resumption

of the district court's jurisdiction over matters of support after being "lost" to the circuit court.

----

[7] The caveat to application of this principle to the facts of the instant case is that husband's support obligations owed to wife under the district court's 1998 support order do not include the period governed by the circuit court's *pendente lite* support order.

[8] See also Berry v. F & S Fin. Mktg., Inc., 271 Va. 329, 333, 626 S.E.2d 821, 823 (2006); Gilbreath v. Brewster, 250 Va. 436, 442, 463 S.E.2d 836, 838 (1995).

[9] See Norwood v. Buffey, 196 Va. 1051, 1055, 86 S.E.2d 809, 811 (1955) ("A dismissal (not upon the merits) is a nonsuit." (citations and internal quotation marks omitted)); Scoggins v. Douglas, 760 F.2d 535, 538 (4th Cir. 1985) (explaining that a nonsuit in Virginia practice under Code § 8.01-380 is the functional equivalent of a voluntary dismissal under Fed. R. Civ. P. 41(a)(1) as both "have as their purpose the voluntary dismissal of an action by a plaintiff without prejudice at some stage of [the] proceeding"); United States v. Matthews, 395 F.3d 477, 480 (4th Cir. 2005) (such "a dismissal without prejudice 'operates to leave the parties as if no action had been brought at all'" (quoting Dove v. CODESCO, 569 F.2d 807, 809 n.3 (4th Cir. 1978))); Jorge v. Rumsfeld, 404 F.3d 556, 563 (1st Cir. 2005) ("A voluntary dismissal without prejudice results in a *tabula rasa*.  It renders the proceedings null and void and leaves the parties in the same position as if the action had never been prosecuted."); see generally, Charles E. Friend, Virginia Pleading & Practice § 12-2 (2005).

Calfee v. Calfee, 29 Va. App. 88, 94, 509 S.E.2d 552, 555 (1999). In Calfee, we explained that "jurisdiction *lost* by the J&D court to the circuit court 'in any suit for divorce' may be *resumed* by 'transfer to the J&D court' by the circuit court for 'enforcement of its orders' or 'after the entry of a decree of divorce' for any other matters pertaining to support' pursuant to Code § 20-79(c)."[10] Id. (emphasis added). We conclude the same is true where, as here, the district court exercised its jurisdiction over the support issues and "lost" it only upon the entry of a temporary support order in a proceeding that ended in a nonsuit, which placed the parties back to where they were before the suit was filed. For the same reasons, we conclude that the district court's support order also automatically resumed upon entry of the nonsuit order. In other words, the operative terms of Code § 20-79, as applied in this case, effected only a temporary suspension of the district court's jurisdiction over support and the operation of its support order. The suspension ended automatically by entry of the nonsuit order, though it would have become permanent had the circuit court support order been made permanent, rather than only temporary (by virtue of the *pendente lite* order).

C.

Our construction of Code § 20-79 in this case is consistent with what we discern to be the legislative intent embodied in the applicable statutory scheme. First, it is consistent with the subject terms "cease" and "inoperative" as defined generally, and as actually used in other parts of the Code. More specifically, these terms may be used to impose either a temporary or permanent effect, depending upon the particular context in which they are being applied.

---

[10] In an analogous context under Code § 8.01-335(C), even though a district court judgment has been vacated and rendered a nullity upon perfection of an appeal to circuit court, that statutory provision effectively reinstates the judgment of the district court upon dismissal of the action for failure to timely prosecute it in circuit court. See W. Hamilton Bryson, Bryson on Virginia Civil Procedure 96 n.194 (3d ed. 1997).

Second, under the applicable statutes, the General Assembly has seen fit to grant concurrent jurisdiction to the district and circuit courts over matters of both child and spousal support. The jurisdiction becomes exclusive to the circuit court when such matters are before that court, which is for obvious reasons—to avoid conflicting decisions and to establish finality. And, once the circuit court renders a final decision, the district court cannot subsequently alter or modify that decision without the consent of the circuit court. Otherwise, the potential for conflict would continue. The same policy considerations do not apply in the instant case, however, where the circuit court has done no more than enter a temporary support order that is terminated without any final determination by the circuit court regarding support. Except for the period of time during which the *pendente lite* support order was in effect, this case is no different than one in which the district court enters a support order, and then, in the subsequent divorce proceeding, no issue of support is addressed by the circuit court in its final decree. In such a case, the district court's jurisdiction over support and its support order remain in effect at the conclusion of the case in circuit court. See Martin, 7 Va. App. at 145-46, 371 S.E.2d at 826 (circuit court divorce decree silent on support does not affect validity of district court support order).

Third, the General Assembly has imposed a clearly expressed limitation on the effect of a *pendente lite* order under Code § 20-103, in providing that "[a]n order entered pursuant to this section shall have no presumptive effect and shall not be determinative when adjudicating the underlying cause." Code § 20-103(E). To hold the entry of the *pendente lite* support order in the instant case had the effect of "irrevocably supersed[ing]" the district court's 1998 support order, as the trial court reasoned, would be contrary to the limited purpose of this statute.

Fourth, the General Assembly was presumptively aware that the effect of granting a voluntary nonsuit, pursuant to Code § 8.01-380, is to return the parties to status quo, and chose

- 11 -

the subject terms used in Code § 20-79 with that principle in mind.  We find that its choice of those terms is most consistent with our holding that a district court's jurisdiction which "cease[s]" and its support orders which "become inoperative," because of a *pendente lite* support order entered in a subsequent divorce proceeding, are rendered operative again by a voluntary nonsuit of that proceeding.  Code § 20-79(a).  Had the General Assembly intended otherwise, it undoubtedly would have provided in express terms that the jurisdiction and support orders of the district court are to be permanently terminated upon the entry of any support order in a subsequent divorce proceeding, whether that support be for the pendency of that proceeding only, or made permanent in a final decree.

Finally, through various civil and criminal statutes,[11] the General Assembly has established a policy making child and spousal support payments a paramount obligation.  To allow a parent or spouse, on the facts here presented, to use a voluntary nonsuit as a way to terminate his or her support obligations and require the other party to go back to district court and start over would greatly undermine that policy.[12]  Such a scenario would promote neither consistency in the provision of support nor efficiency in the administration of justice.

III.  CONCLUSION

For these reasons, we reverse the judgment of the circuit court, and remand for a determination of the child and spousal support owed to appellant under the 1998 district court

---

[11] See Code § 16.1-241; Code §§ 20-61 to 20-67; Code § 20-81; Code §§ 20-88.32 to 20-88.82; Code § 20-79; Code § 20-103; Code § 20-107.1; Code § 20-107.2; Code § 20-108; Code § 20-109; Code § 20-109.1; Code §§ 20-113 to 20-115; Code §§ 63.2-1900 to 63.2-1960.

[12] By contrast, in the instant case, husband went back to district court and filed numerous motions requesting downward modifications of the original district court support order.  Of course, at the time husband filed these motions, he was not arguing that the district court support order permanently terminated upon entry of the *pendente lite* order.  In fact, his motions would indicate just the opposite—that husband was treating the district court order as revived at the time of the nonsuit.  These filings were, therefore, the impetus for wife's laches argument, which we do not need to reach in this case.  See *supra*, note 3.

support order, both before the circuit court's July 23, 1999 *pendente lite* support order, effective February 1, 1999, and after January 8, 2000, the date of the nonsuit order.  Because the parties were temporarily subject to the circuit court's jurisdiction over the support matters during the pendency of the circuit court's *pendente lite* support order, husband's support obligations for that period are limited to the amounts set forth in that order.  Thus, husband's support obligations owed to wife under the district court's 1998 support order do not include the period governed by the circuit court's *pendente lite* support order.

Reversed and remanded.