COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Athey and Callins
Argued at Arlington, Virginia


SEVATEC, LLC, F/K/A
  SEVATEC, INC.

                                          MEMORANDUM OPINION[*] BY
v.      Record No. 0061-24-4            JUDGE DOMINIQUE A. CALLINS
                                              MARCH 11, 2025

SGS PROPERTIES, LLC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontaé L. Bugg, Judge

Imad Matini (Paul Werner; Angelo A. Pavone; J. Chapman
Petersen; Federico J. Zablah; Sheppard Mullin Richter &
Hampton, LLP; Chap Petersen & Associates, PLC, on briefs), for
appellant.

Charles M. Sims (Rachael L. Loughlin; O'Hagan Meyer, PLLC,
on brief), for appellee.


Sevatec, LLC, ("Sevatec") appeals the circuit court's judgment dismissing Sevatec's

motion for SGS Properties, LLC, ("SGS") to reimburse Sevatec's attorney fees and costs

incurred in defending a breach-of-contract claim brought by SGS against Sevatec. Sevatec

argues that the circuit court's July 31, 2023 order resolving the breach-of-contract claim was not

a final order under Rule 1:1, and thus the court retained jurisdiction to resolve the issue of

attorney fees and costs twenty-one days after the July 31, 2023 order was entered. We hold that

the circuit court's order resolving the breach-of-contract claim was not a final order, and thus we

reverse the circuit court's judgment and remand this case for further proceedings consistent with

this opinion.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

The litigation in this case centers on alleged breaches by Sevatec of a Lease Termination Agreement ("LTA") between Sevatec and SGS. The LTA was the result of an acquisition of Sevatec—a company founded by Arvinder Kakar—by Octo Consulting Group, LLC ("Octo"). Kakar also owned SGS, through which he leased property in Fairfax County to Sevatec. As part of the acquisition of Sevatec by Octo, Sevatec and SGS entered into the LTA to terminate the lease of the Fairfax property. Section 8 of the LTA provides that in "any action or proceeding to enforce any provision of this Agreement . . . the prevailing Party in such action or proceeding shall be entitled to recover from the losing Party all costs and expenses incurred in any such action or proceeding, including but not limited to its reasonable attorneys' fees."

On January 19, 2022, SGS filed a complaint against Sevatec alleging that Sevatec breached the LTA by continuing to use and occupy the Fairfax property after the LTA's termination date. SGS also asserted a quantum meruit claim against Sevatec. Sevatec filed an answer to the complaint on February 22, 2022. In their respective pleadings, both parties sought attorney fees and costs. Specifically, SGS requested in its complaint that the circuit court "[a]ward [SGS] its costs and attorneys' fees," and Sevatec stated in its answer that "Sevatec is entitled to an award of its costs, including expert costs, and attorney's fees incurred in defending this action in such amount as this Court may deem appropriate. The basis for such award includes, without limitation, Section 8 of the LTA."

On May 26, 2023, SGS, with Sevatec's consent, filed a motion to bifurcate the parties' claims for attorney fees from the underlying issue of liability. In the motion, SGS asked the circuit court to "decide the prevailing party's claim for attorney's fees at a hearing to occur after trial on the merits is complete and before final judgment is entered." SGS also asserted that presenting evidence on attorney fees during the liability phase of the trial would be

"unnecessary, inefficient, premature, and prejudicial to the parties." On June 8, 2023, SGS filed a motion to nonsuit its quantum merit claim against Sevatec. The circuit court did not rule on the nonsuit motion or enter the proposed order accompanying the motion.

The circuit court held a two-day bench trial on liability and then took the matter under advisement.[1] At a hearing on July 19, 2023, the circuit court entered judgment in favor of Sevatec on SGS's breach-of-contract claim and asked Sevatec to prepare the corresponding order.[2] On July 31, 2023, the circuit court entered an order prepared by Sevatec, titled "Order," which memorialized the court's judgment on the breach-of-contract claim and further ordered that

> [t]he parties shall appear before the Court on August 25, 2023, at 10:00 AM, for a hearing on the attorney's fees and costs to be paid under Section 8 of the Lease Termination Agreement to Sevatec for prevailing against SGS on its claim and for entry of the Final Order in this matter. Sevatec shall submit its submission in support of its attorney's fees and costs on or before August 3, 2023, and SGS shall submit its opposition to Sevatec's submission in support of such fees and costs on or before August 17, 2023.

The July 31, 2023 order also incorporated the transcript of the July 19, 2023 hearing as an exhibit. On August 3, 2023, Sevatec filed a motion for attorney fees and costs, requesting $951,763.45 in attorney fees and $177,404.85 in costs. SGS filed a brief in opposition on August 17, 2023.

---

[1] The circuit court did not enter an order granting SGS's bifurcation motion, but the court nevertheless conducted the trial as a bifurcated proceeding, and thus the parties did not present evidence on attorney fees and costs at trial.

[2] In entering its judgment, the circuit court noted that "[p]rior to trial, plaintiffs non-suited count two to this complaint," i.e., the quantum meruit claim. Further, in response to Sevatec pointing out that it had filed a stipulation to bifurcate the prevailing party fee provision issue and have a separate hearing on that issue, the circuit court judge specifically stated, "Yes. So we will take care of that and the entry of the order on the same day." The judge then clarified, "We'll do August 25th at 10:00 a.m. for a hearing on the issue of attorneys' fees as well as entry of order."

On August 22, 2023—twenty-two days after the circuit court entered the July 31 order—SGS moved to dismiss Sevatec's motion for attorney fees and costs. In its motion to dismiss, SGS argued that the circuit court's July 31 order was a final order under Rule 1:1 because the circuit court did not expressly state in the order that it was retaining jurisdiction over the case, nor did the order suspend the judgment until after the court ruled on Sevatec's request for attorney fees and costs. Thus, SGS argued that the circuit court lost jurisdiction over the case on August 21, 2023—twenty-one days after the July 31, 2023 order was entered. Sevatec filed a brief in opposition to SGS's motion to dismiss, arguing that the July 31, 2023 order was not a final order.

At a hearing on December 8, 2023, the circuit court granted SGS's motion to dismiss, finding that the July 31 order was a final order under Rule 1:1. The circuit court reasoned that the order did not expressly state that the court was modifying, vacating, or suspending the judgment nor did it state that the court was retaining jurisdiction, and further, that under *City of Suffolk v. Lummis Gin Co.*, 278 Va. 270 (2009), the court's directive to the parties that the issue of attorney fees and costs would be addressed at a later date was not sufficient to prevent the July 31, 2023 order from being a final order. The circuit court also reasoned that the order entered judgment on the underlying claim at issue—the breach-of-contract claim—and "did not leave anything left for the Court to handle." The circuit court entered an order granting SGS's motion to dismiss, finding that, under Rule 1:1, the court's jurisdiction over the case expired twenty-one days after the entry of the July 31, 2023 order. Sevatec appeals.

ANALYSIS

"The question of whether a particular order is a final judgment is a question of law that we review *de novo*." *Carrithers v. Harrah*, 60 Va. App. 69, 73 (2012). Additionally, "[a] lower court's interpretation of the Rules of [the Supreme Court of Virginia], like its interpretation of a statute,

presents a question of law that we review de novo." *Amin v. Cnty. of Henrico*, 286 Va. 231, 235 (2013) (quoting *LaCava v. Commonwealth*, 283 Va. 465, 469 (2012)).

Under Rule 1:1(a), "[a]ll final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." In turn, Rule 1:1(b) defines when an order is "final," providing that

> a judgment, order, or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree.

Under the plain language of Rule 1:1(b), a final order must not only "dispose[] of . . . all claim(s) and all cause(s) of action against all parties but must also "give[] all the relief contemplated." Accordingly, "[w]here further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree is not final but interlocutory." *Kellogg v. Green*, 295 Va. 39, 45 (2018) (quoting *Brooks v. Roanoke Cnty. Sanitation Auth.*, 201 Va. 934, 936 (1960)). "'The distinction between an order that renders judgment and retains jurisdiction and an order that renders judgment but does not retain jurisdiction' is often language that 'expressly indicate[s] that the order was not rendering final judgment.'" *Zeng v. Wang*, 82 Va. App. 326, 342 (2024) (alteration in original) (quoting *Super Fresh Food Mkts. v. Ruffin*, 263 Va. 555, 561-62 (2002)).

Here, Sevatec's request for attorney fees and costs was clearly part of the "relief contemplated" under Rule 1:1(b), and thus the circuit court's July 31, 2023 order leaving that issue unresolved for a later date was not a final order.[3] First, in its answer to SGS's complaint, Sevatec

---

[3] Sevatec argues on brief that the outstanding quantum meruit claim also prevented the circuit court's July 31, 2023 order from being a final order. But Sevatec never made this specific argument to the circuit court in its opposition to SGS's motion to dismiss, and thus this argument is not preserved for appeal. Rule 5A:18.

initially requested that it be awarded attorney fees and costs under Section 8 of the LTA, and thus the issue of attorney fees and costs was contemplated as early as the pleadings stage of this case. Second, upon SGS's request and with Sevatec's consent, the circuit court proceeded with trial in a manner consistent with bifurcating the issue of attorney fees and costs from the underlying issue of liability, further demonstrating that the issue of attorney fees and costs was part of the relief contemplated by the parties and the circuit court. Finally, in further contemplation of resolving the issue of attorney fees and costs at a later date, the circuit court in its July 31, 2023 order set out a briefing schedule for the parties to brief the issue of attorney fees and costs, set a date and time for a hearing on this issue, and stated that "entry of the Final Order in this matter" would occur at that time. Although the July 31, 2023 order resolved SGS's underlying breach-of-contract claim against Sevatec, the order did not "give[] all the relief contemplated," and thus the July 31, 2023 order was not a final order. Rule 1:1(b).

Because we hold that the July 31, 2023 order was not a final order under Rule 1:1(b), the various legal principles generally applicable to final orders under Virginia law are inapplicable here. The Supreme Court has stated that "to 'avoid the application of the 21[-]day time period' running from what would otherwise be a final order, the order must include '*specific* language stating that the court is retaining jurisdiction' over the case." *Monroe v. Monroe*, 302 Va. 387, 398 (2023) (quoting *Johnson v. Woodard*, 281 Va. 403, 409 (2011)). "Once a final written order is entered, a trial court has twenty-one days to enter a new written order or to enter a written order modifying, suspending, or vacating the prior order to allow the court sufficient time to address the post-trial motion." *Kosko v. Ramser*, 299 Va. 684, 689 (2021). "The filing of ancillary motions for the recovery of costs or the filing of other post-trial motions does not suddenly transform an otherwise final order into a nonfinal order." *Id.* All these principles, however, are based on the fundamental presupposition that a final order under Rule 1:1(b) was

entered in the first place—something that has not yet occurred in this case. Because the circuit court's July 31, 2023 order was not a final order, it is irrelevant that the circuit court did not expressly state in the July 31, 2023 order that it was retaining jurisdiction over the case. Nor is it relevant that the circuit court did not enter any order modifying, suspending, or vacating the July 31, 2023 order's judgment on the breach-of-contract claim. Because the circuit court's July 31, 2023 order was not a final order, the court did not have to perform any of these actions to maintain jurisdiction over the case twenty-one days after the July 31, 2023 order was entered. Rule 1:1(a).

We also disagree with the circuit court's conclusion that *City of Suffolk v. Lummis Gin Co.* controls the outcome of this case. In *Lummis Gin*, the Supreme Court held that a trial court had no authority to award attorney fees and costs to certain defendants ("the Baker heirs") under Code § 8.01-380(B)[4] after the City nonsuited its lawsuit against the Baker heirs because the Court determined the City had taken only one nonsuit against the Baker heirs, rather than multiple nonsuits. 278 Va. at 275-76. In noting that "our holding that the City was granted a first nonsuit in this case resolves this appeal," *id.* at 276, the Court established that its decision hinged on its application of Code § 8.01-380(B). Further, the Court's conclusion that the trial court's nonsuit order was a final order under Rule 1:1 rested primarily on the principle that "the concept of nonsuit is sufficiently imbued with the attributes of finality to satisfy the requirements

---

[4] Code § 8.01-380(B) provides, in relevant part:

> Only one nonsuit may be taken to a cause of action or against the same party to the proceeding, as a matter of right, although the court may allow additional nonsuits upon reasonable notice to counsel of record for all defendants and upon a reasonable attempt to notify any party not represented by counsel, or counsel may stipulate to additional nonsuits. The court, in the event additional nonsuits are allowed, may assess costs and reasonable attorney fees against the nonsuiting party.

of Rule 1:1" and "from its very nature, an order granting a nonsuit should be subject to the provisions of Rule 1:1." *Id.* at 277 (quoting *James v. James*, 263 Va. 474, 481 (2002)). Put differently, *Lummis Gin* stands for the proposition that a first nonsuit order terminates comprehensively all aspects of contest between parties and is thus inherently final for purposes of Rule 1:1. *Id.* at 275 ("It is readily apparent that Code § 8.01-380(B) draws a clear distinction between a first nonsuit which must be granted as a matter of right and a second or additional nonsuit which permits the trial court to assess costs and reasonable attorneys' fees against the nonsuiting party."); *see also James*, 263 Va. at 481 (emphasizing that because a plaintiff has an "absolute right" to a first nonsuit which cannot be encroached by a court or an opposing counsel, upon its entry "the case becomes 'concluded as to all claims and parties' and 'nothing remain[s] to be done'" (alteration in original) (quoting *Dalloul v. Agbey*, 255 Va. 511, 515 (1998))). Conversely, there is nothing in the nature of the July 31 order which renders its finality inherent. Thus, the circuit court's reliance on *Lummis Gin* was misplaced.

Finally, Sevatec has requested that this Court award Sevatec its attorney fees and costs incurred in bringing this appeal. *See* Rule 5A:30. Section 8 of the LTA provides that in "any action or proceeding to enforce any provision of this Agreement . . . the prevailing Party in such action or proceeding shall be entitled to recover from the losing Party all costs and expenses incurred in any such action or proceeding, including but not limited to its reasonable attorneys' fees." Sevatec brought this appeal to enforce its right to attorney fees and costs under Section 8 of the LTA in prevailing against SGS on the breach-of-contract claim, and Sevatec has now prevailed in this appeal. Therefore, pursuant to Section 8 of the LTA, we award Sevatec its attorney fees and costs in bringing this appeal and remand for the circuit court to determine Sevatec's reasonable attorney fees incurred in bringing this appeal.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed, and the case is remanded for the circuit court to hold a hearing to determine Sevatec's reasonable attorney fees and costs incurred both in the litigation before the circuit court and on appeal to this Court.

*Reversed and remanded.*