UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Beales and Decker
Argued at Chesapeake, Virginia

BAYARD BRYON CAMPBELL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2060-13-1                      JUDGE RANDOLPH A. BEALES
                                                    AUGUST 5, 2014
LAURA PENDLETON CAMPBELL

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Rodham T. Delk, Jr., Judge

SuAnne Hardee Bryant (Davis Law Group, P.C., on briefs), for
appellant.

John H. Kitzmann (Davidson & Kitzmann, PLC, on brief), for
appellee.

        The circuit court granted Laura Pendleton Campbell (wife) a divorce from Bayard Bryon

Campbell (husband) on the ground of the parties living separately and apart for more than a year.

See Code § 20-109(A)(9)(a).  Husband appeals several rulings from the circuit court's September

27, 2013 final orders addressing spousal support[1] and equitable distribution.  For the following

reasons, we affirm in part, reverse in part, and remand the matter to the circuit court for further

proceedings consistent with this opinion.

I. BACKGROUND

        On appeal, we view the evidence in the light most favorable to wife, the party prevailing

below, Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008), and we grant to wife

"all reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As explained *infra*, the September 27, 2013 final spousal support order was entered
*nunc pro tunc* to February 21, 2013.

678, 514 S.E.2d 369, 372 (1999). The parties married in December 1993, had two children during the marriage, and separated in September 2010 when wife left the marital home with the parties' children.[2] Wife filed a complaint for divorce, and, in his answer to wife's complaint, husband also filed a cross-complaint for divorce. The circuit court entered a *pendente lite* order on February 8, 2011 that, among other rulings, awarded wife $4,318 per month in *pendente lite* spousal support and prohibited the parties from disposing of, encumbering, or increasing the debt of any marital asset.

The parties' divorce hearing occurred in the circuit court on August 13, 2012 and also on December 7, 2012, when the circuit court heard additional testimony relevant to equitable distribution and spousal support. The evidence below established that husband was a practicing neurosurgeon when the parties married – but he was then left totally and permanently disabled for employment purposes after contracting tropical spastic paraparesis, a rare disease that will ultimately leave husband completely unable to use his legs. Thereafter, husband has received $14,783 monthly from a private disability insurance policy as well as a $2,047 monthly disability benefit from the Social Security Administration. Wife obtained her medical degree and specialized in child psychiatry during the marriage, practicing medicine as a child psychiatrist in South Carolina until her pregnancy with the parties' first child. Wife then returned to work three years before the parties' separation when she started an interior design business – although, as the circuit court found, the income generated by that business was "negligible, if any."[3]

Confirming most of its rulings from a February 13, 2013 letter opinion, the circuit court found in its September 27, 2013 final equitable distribution order that three life insurance policies purchased from the Guardian Life Insurance Company during the marriage had accrued cash values

---

[2] Child support is not at issue in this appeal.

[3] It appears from the record that the business's revenues were spent on entertainment and on facial plastic surgery for wife and her brother, who assisted wife with the interior design business.

and were marital assets for purposes of equitable distribution. One of those policies (the Guardian *608 policy) that was titled in husband's name, listed the parties' two children as revocable beneficiaries, and had accrued a substantial cash value of $799,513. In its September 27, 2013 final order, the circuit court entered a monetary award directing husband to pay wife $399,756.50 – representing half of the Guardian *608 policy's accrued cash value. Furthermore, the circuit court directed husband to pay an additional $54,642 to wife to satisfy the terms of a prior contempt order – in which the circuit court had found that husband was in contempt of the February 8, 2011 *pendente lite* order by obtaining loans from the Guardian *608 policy's cash value following the parties' separation.

In addition, the circuit court's September 27, 2013 final spousal support order awarded wife $3,000 in monthly spousal support until husband's private disability insurance policy lapses, which will occur when husband reaches age sixty-five.[4] The circuit court entered this final spousal support award – which was $1,318 less per month than the *pendente* lite spousal support award – *nunc pro tunc* to February 21, 2013. However, the circuit court declined husband's request for an overpayment credit accounting for five months' difference between husband's *pendente lite* spousal support obligation and husband's final spousal support obligation. The circuit court also did not impute any income to wife. The circuit court explained in its February 13, 2013 letter opinion that wife's "ability to return to her prior medical career is presently negligible." However, neither the circuit court's letter opinion nor its final spousal support order directly addressed wife's own evidence, from her own vocational expert, Charles DeMark, that wife could earn $40,00 to $60,000 per year as a biology or chemistry teacher, as a pharmaceutical sales person, or as a community college professor.

---

[4] Husband was age fifty-two when the circuit court entered the final spousal support award to wife.

Moreover, the circuit court awarded wife $10,000 in attorneys' fees and costs. The circuit court did not premise this award on the conduct of either party – but instead "[i]n light of the significant income disparity and resources" of the parties.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Husband raises seven assignments of error (and several sub-parts), which he acknowledges on brief are all reviewed on appeal for abuse of discretion by the circuit court. Under this deferential standard of review, this Court must "show enough deference to a primary decisionmaker's judgment that the [appellate] court does not reverse merely because it would have come to a different result in the first instance." Lawlor v. Commonwealth, 285 Va. 187, 212, 738 S.E.2d 847, 861 (2013) (internal quotation marks and citation omitted); see also, e.g., Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) ("When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" (internal quotation marks and citation omitted)).

"Accordingly, 'when a decision is discretionary . . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Lawlor, 285 Va. at 212-13, 738 S.E.2d at 861 (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

### B. PENDENTE LITE SPOUSAL SUPPORT

In his first assignment of error, husband challenges the portion of the February 8, 2011 *pendente lite* order in which the circuit court awarded wife $4,318 in monthly *pendente lite* spousal support. Husband claims that the circuit court "relied solely on the application of the so-called

'Fairfax' or statutory spousal support guidelines" when deciding the appropriate amount of *pendente lite* spousal support.[5]  However, the record on appeal does not support husband's claim.

Under the well-established law of Virginia, it is husband's burden to establish that the circuit court committed reversible error.  See, e.g., Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992) (*en banc*).

> "We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of.  If the appellant fails to do this, the judgment will be affirmed."

Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (quoting Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961)).

Code § 20-103(A) gives the appropriate circuit court the discretion to enter a *pendente lite* order, *inter alia*, "to compel a spouse to pay any sums necessary for the maintenance and support of the petitioning spouse" and "to enable such spouse to carry on the suit" through the entry of the *pendente lite* spousal support order.  While Code § 20-103(A) sets forth no prescribed method or factors for determining (in the circuit court's discretion) what is the appropriate amount of *pendente lite* spousal support, husband contends that the circuit court erred in this case by "rel[ying] solely" on the formula stated in the "Fairfax guidelines."  However, husband has failed to provide this Court with an adequate record on appeal to meet his burden of establishing reversible error by the circuit court.[6]

---

[5] Wife asserts that this assignment of error must be dismissed, as she contends that the *pendente lite* order is not an appealable order.  We disagree with wife's assertion here.  While the *pendente lite* order was not an *immediately* appealable order, its rulings were subject to appeal following the entry of the circuit court's final judgment.  See Pinkard v. Pinkard, 12 Va. App. 848, 853, 407 S.E.2d 339, 342 (1991).

[6] We need not address – and do not address – whether it is error in general for a circuit court to "rely solely" on a local guidelines formula in determining *pendente lite* spousal support.  In this

The record on appeal does not contain the transcript of the *pendente lite* hearing in the circuit court, which was held on December 13, 2010. The record also does not contain a statement of facts in lieu of a transcript describing what occurred at the *pendente lite* hearing. Thus, the record does not reflect the circuit court's actual findings and rulings at the *pendente lite* hearing. Husband's argument in support of his first assignment of error instead rests on an isolated exchange from the transcript of the August 13, 2012 divorce hearing. There, the circuit court told wife's counsel that it would not use any local guidelines when determining the final spousal support order under Code § 20-107.1. Husband's counsel stated, "And I appreciate that, Your Honor, because at the *pendente lite* level, the guidelines were what was used." The circuit court responded, "I understand. I've already addressed that."

However, without the transcript of the actual *pendente lite* December 13, 2010 hearing being in the record on appeal, this isolated and rather vague statement by the circuit court at the August 13, 2012 divorce hearing simply cannot be interpreted as any admission by the circuit court that it "relied solely" on the "Fairfax guidelines" at the *pendente lite* hearing a year and a half earlier. Accordingly, husband's argument here fails.[7]

---

specific case, the record simply does not support husband's allegation that the circuit court actually "relied solely" on the "Fairfax guidelines" when determining the amount of *pendente lite* spousal support.

[7] Furthermore, husband's argument here overlooks the basic principle "in this Commonwealth that a circuit court speaks only through its written orders." Roe v. Commonwealth, 271 Va. 453, 457, 628 S.E.2d 526, 528 (2006). The Supreme Court has "consistently applied this well-established principle." Id. (citations omitted). The February 8, 2011 *pendente lite* order does not mention that the award of $4,318 in monthly *pendente lite* spousal support to wife was based on the "Fairfax guidelines" or any other local guidelines. The circuit court's isolated remark at the August 13, 2012 divorce trial certainly cannot trump the plain language of the circuit court's February 8, 2011 *pendente lite* order. See Pilson v. Commonwealth, 52 Va. App. 442, 444, 663 S.E.2d 562, 563 (2008) ("[W]e look to the sentencing order -- not the court's remark from the bench -- to discern its holding.").

- 6 -

C. GUARDIAN LIFE INSURANCE POLICIES (PARTICULARLY THE *608 POLICY)

Husband raises several arguments pertaining to life insurance policies that were purchased from the Guardian Life Insurance Company during the parties' marriage. Two of these policies are titled in husband's name, and one policy is titled in wife's name. Of particular significance to this appeal is the Guardian *608 policy, which is titled in husband's name and lists the parties' two children as revocable beneficiaries. The Guardian *608 policy carried an approximately $2.9 million death benefit at the time of the divorce trial. It had also accrued a significant cash value, which the circuit court found was $799,513 as of the date of the divorce trial.

*1. Classification of the Guardian Life Insurance Policies as Marital Assets*

In his second and fourth assignments of error, husband challenges the circuit court's treatment of the parties' Guardian life insurance policies. Based on his argument that the Guardian *608 policy is not a marital asset, husband contends in Assignment of Error 2 that he could not be held in contempt of the February 8, 2011 *pendente lite* order for obtaining loans from the Guardian *608 policy's cash value. Furthermore, husband also asserts in Assignment of Error 4 that the Guardian *608 policy's cash value was not properly the subject of a monetary award in the circuit court's equitable distribution order because he again claims that the policy is not a marital asset.[8]

Under settled principles, a circuit court's "classification of property is a finding of fact," and "that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005).

> Property acquired during the marriage is presumptively marital, unless shown to be separate property. See Code § 20-107.3(A)(2)(iii); see also Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 142 (1997); Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993) ("Property acquired during the

_____

[8] As explained *infra*, portions of husband's second and fourth assignments of error also specifically challenge the circuit court's decision to sanction husband under the circuit court's contempt power for a $15,000 loan that husband obtained from the Guardian *608 policy's cash value on or about October 29, 2010.

> marriage is presumed to be marital and property acquired before marriage is presumed to be separate.").

Robinson v. Robinson, 46 Va. App. 652, 662, 621 S.E.2d 147, 152 (2005) (*en banc*). Here, the record establishes that the parties' life insurance policies, including the Guardian *608 policy, were purchased during the marriage.[9] Thus, the Guardian *608 policy is presumptively a marital asset, and husband failed to rebut that presumption at the divorce trial.

The fact that the Guardian *608 policy is titled solely in husband's name (and not in wife's name) does not alter or affect our analysis. Code § 20-107.3(A) specifically addresses the equitable distribution of property, and nowhere does that statute provide that title to an asset is a dispositive factor when, as here, the asset is acquired during the marriage. "[E]quitable distribution deviates from traditional views of property ownership in that 'whether the property is separate or marital is determined by the statutory definition and is not determined by legal title.'" Lightburn v. Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996) (quoting Garland v. Garland, 12 Va. App. 192, 195, 403 S.E.2d 4, 6 (1991)); see also Robinson, 46 Va. App. at 661, 621 S.E.2d at 152. Husband's reliance on portions of Title 38.2 of the Code of Virginia, addressing insurance policies in general, is misplaced. The property classification principles of Code § 20-107.3(A) instead apply to the circumstances here. Thus, husband's argument that wife is merely an unsecured creditor of the Guardian *608 policy is meritless.

Furthermore, this Court's decision in Taylor v. Taylor, 5 Va. App. 436, 364 S.E.2d 244 (1988), is highly instructive for the analysis here. In Taylor, this Court noted that one of the parties there owned a life insurance policy that was acquired during the marriage and that had accrued a cash value. Id. at 438, 364 S.E.2d at 246. Affirming the trial court's equitable distribution order on

---

[9] According to the record on appeal, the Guardian *608 policy became effective on August 17, 1995 – *after* the marriage of the parties in December 1993. In addition, the record establishes that $3,000 monthly premiums were paid on the Guardian *608 policy (presumably using marital funds) until approximately 2002 – when the terms of the policy changed and the premium was waived after husband became disabled due to tropical spastic paraparesis.

appeal, this Court held that the cash value of that life insurance policy was among the marital assets that could be used to satisfy the equitable distribution award. Id. at 444, 364 S.E.2d at 249. Thus, this Court's decision in Taylor supports the circuit court's finding here that the Guardian *608 policy is a marital asset for purposes of enforcing the *pendente lite* order's prohibition against the disposal of marital property[10] – as well as the circuit court's subsequent finding at the divorce trial that the Guardian *608 policy's accrued cash value could be apportioned to the parties during equitable distribution.

### 2. *Monetary Award Based on Cash Value of the Guardian *608 Policy*

Husband makes a related argument in his fifth assignment of error, in which he challenges the circuit court's decision to enter a monetary award to wife in the amount of $399,756.50 – representing one-half of the Guardian *608 policy's accrued cash value of $799,513.[11] Specifically, husband argues that the circuit court erred in effectively "order[ing] the sale or transfer" of the Guardian *608 policy because he claims that "the only way" to satisfy the equitable distribution order relating to this policy's large cash value is for husband to surrender the policy. Husband does not wish to surrender the Guardian *608 policy, as he has indicated at trial and now on appeal.

"'In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Wright v. Wright, 61 Va. App. 432, 449-50, 737 S.E.2d 519, 527 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161,

---

[10] Our conclusion here renders moot husband's argument in Assignment of Error 2(A) that the circuit court somehow abused its discretion by initially classifying the Guardian *608 policy as a marital asset for purposes of enforcing the February 8, 2011 *pendente lite* order.

[11] Husband does not argue in this assignment of error – or in any other assignment of error – that the $399,756.50 monetary award to wife was erroneous on the ground that the circuit court failed to take into account the $140,196.13 in *pre-separation* loans that were obtained from the Guardian *608 policy's cash value *during the marriage of the parties*. As husband's counsel acknowledged during oral argument before this Court, husband has not raised that particular issue on appeal.

396 S.E.2d 866, 870 (1990)); see also Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990) (explaining that "[f]ashioning an equitable distribution award lies within the sound discretion of the trial judge"). Accordingly, this Court will not reverse an award "[u]nless it appears from the record that the [trial court] has abused [its] discretion," that the trial court "has not considered or [has] misapplied one of the statutory mandates," or "that the evidence fails to support the findings of fact underlying [the] resolution of the conflict." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

As an initial matter, however, the record does not support the very premise of this fifth assignment of error – i.e., that the circuit court's monetary award to wife could be satisfied *only* if husband terminated or surrendered the Guardian *608 policy. Husband understandably wishes to retain the Guardian *608 policy – given that the parties' two children are the listed revocable beneficiaries of the policy, which carries a $2.9 million death benefit. However, husband's counsel admitted at oral argument before this Court that the available cash value of the Guardian *608 policy – even after accounting for the loans already obtained from that cash value – is still so large that husband could actually satisfy the monetary award by obtaining further loans from the Guardian *608 policy's cash value. Thus, while the monetary award certainly *could* be satisfied by surrendering the Guardian *608 policy, surrendering it is not absolutely *necessary* in order to satisfy the monetary award. According to the record, husband could retain ownership of the Guardian *608 policy and continue to borrow from its cash value, as husband's counsel acknowledged during oral argument.

- 10 -

Furthermore, the circuit court had the authority to grant the $399,756.50 monetary award to wife.[12]  Significantly, the circuit court here did not *actually* order the division or transfer of either Guardian life insurance policy (including the Guardian *608 policy), which is owned solely by husband.  See Code § 20-107.3(C) (generally not permitting a circuit court to "order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned or owed").  Instead, in its final equitable distribution order, the circuit court granted wife *a monetary award* equal to one-half of the Guardian *608 policy's accrued cash value, which the circuit court found to be $799,513.

Code § 20-107.3(D) expressly permits a monetary award of this type.  It states, in pertinent part:

> In addition, based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E, the court has the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party.  The party against whom a monetary award is made may satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court.

Code § 20-107.3(D).  Thus, the circuit court in its discretion could divide the cash value of the Guardian *608 policy (a marital asset), even though husband is listed as the sole owner of that asset.  See Code § 20-107.3(B) ("For the purposes of this section only, both parties shall be deemed to have rights and interests in the marital property.  However, such interests and rights *shall not attach to the legal title of such property* and are only to be used *as a consideration in determining a monetary award*, if any, as provided in this section." (emphasis added)).

---

[12] In Assignment of Error 5, husband also disputes the circuit court's monetary award of $7,928, in which it divided the accrued cash value of the Guardian *482 policy (another policy titled in husband's name that was purchased during the marriage).  However, husband does not indicate that any loans were taken on that specific policy's cash value or explain how the circuit court erred in making such an award.

- 11 -

*3. Inclusion of Loan Made Before the Pendente Lite Order in the Contempt Sanction*

In Assignment of Error 2(B), husband challenges an aspect of the circuit court's August 7, 2012 order finding husband in contempt of the February 8, 2011 *pendente lite* order's prohibition against disposing of, encumbering, or increasing the debt of any marital asset.[13]  Specifically, husband contends in Assignment of Error 2(B) that the contempt order is erroneous because its sanction against husband included the value of a $15,000 loan that husband obtained before the circuit court held the December 13, 2010 *pendente lite* hearing and before the circuit court entered its February 8, 2011 *pendente lite* order.

The record on appeal establishes that the parties obtained several loans from the Guardian *608 policy's cash value during the marriage.  Those loans are not directly at issue in this case.  According to the last policy statement prior to the parties' separation, the loan balance taken from the Guardian *608 policy's cash value was $140,196.13 when the parties separated in September 2010.

---

[13] Specifically, this portion of the February 8, 2011 *pendente lite* order stated,

> [E]ach of the parties is enjoined and restrained from . . . disposing of or further encumbering or increasing the debt secured by any marital assets (property, real and personal, tangible and intangible, acquired by either or both parties since the date of their marriage and prior to their last separation or acquired since the separation with or in exchange for marital assets or by the encumbrance of marital assets) . . . .

We disagree with husband's assertion in Assignment of Error 2(C) that the circuit court erroneously found that husband "increased debt secured by a marital asset."  First, it is not clear from the record whether the circuit court's contempt finding was based on husband increasing the amount of marital debt or simply disposing of marital assets by reducing the available cash value of the Guardian *608 policy.  Second, we disagree with husband's argument that the Guardian *608 policy could be anything other than marital property under the circumstances of this case.  See Taylor, 5 Va. App. at 444, 364 S.E.2d at 249 (where one of the parties' life insurance policies was classified as a marital asset and where that policy's cash value was among the marital assets that could satisfy the monetary award entered by the trial court in equitable distribution).

After the separation of the parties, husband then obtained loans from the Guardian *608 policy's accrued cash value on the following dates and for the following amounts:

- on or about October 29, 2010 – $15,000;

- on or about June 30, 2011 – $10,000;

- on or about November 7, 2011 – $15,000;

- on or about December 2, 2011 – $25,000;

- on or about March 27, 2012 – $15,000; and,

- on or about March 28, 2012 – $10,000.

On May 22, 2012, the circuit court held a show cause hearing to determine whether to find husband in contempt of the February 8, 2011 *pendente lite* order for obtaining loans from the Guardian *608 policy's accrued cash value. The transcript of the show cause hearing is not part of the record on appeal, but it is clear from the record that the circuit court issued a bench ruling finding husband in contempt of the *pendente lite* order. Husband filed a written motion for reconsideration, and the circuit court entered a written contempt order on August 7, 2012 finding husband "to be in contempt of this Court for his willful failure to obey the *Pendente Lite* Order" because husband, "on multiple occasions, borrowed money from cash values and dividends earned upon" the Guardian *608 policy, which was "purchased during the marriage and considered to be marital property and subject to equitable distribution" by the circuit court.

The circuit court also ruled in its August 7, 2012 contempt order that, "as a sanction therefore, [husband] is herewith ORDERED to *return all funds borrowed by him since the August 17, 2010, insurance company statement* such that the outstanding loan balance on [the Guardian *608 policy] shall be returned to the sum of $140,196.13" – i.e., the loan balance prior to the parties' separation. (Emphasis added). In other words, the circuit court ordered husband to return *all* of the post-separation loans that husband borrowed from the Guardian *608 policy's cash value

- 13 -

– including the $15,000 loan made on or about October 29, 2010, which occurred several months *before* the February 8, 2011 *pendente lite* order was even entered.  The decision to include that $15,000 loan in the contempt sanction is reversible error.

"In order to hold a litigant in contempt for violation of a court order, the litigant must have knowledge of the terms of the order."  Zedan v. Westheim, 60 Va. App. 556, 574, 729 S.E.2d 785, 794 (2012); see also Calamos v. Commonwealth, 184 Va. 397, 406, 35 S.E.2d 397, 400 (1945); Tsai v. Commonwealth, 51 Va. App. 649, 653, 659 S.E.2d 594, 596 (2008).  The litigant's knowledge of the terms of the court's order is a necessary component of a contempt analysis because, to uphold the finding of contempt, there must be sufficient evidence that the offending party acted "in bad faith or [in] willful disobedience of [the court's] order.'"  Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (quoting Carswell v. Masterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982)).

In this case, at the time that husband took the $15,000 loan from the Guardian \*608 policy's cash value on or about October 29, 2010, husband lacked any knowledge of the circuit court's February 8, 2011 *pendente lite* order – given that the *pendente lite* order itself had *not even been entered*.  A party cannot possibly have knowledge of an order that does not yet exist.  Therefore, the circuit court erred as a matter of law in its August 7, 2012 contempt order when it punished as contemptuous husband's $15,000 loan that was taken months before the entry of the February 8, 2011 *pendente lite* order.  See Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) ("[A] trial court by definition abuses its discretion when it makes an error of law.").

*4. Additional $54,642 Award to Wife Based on Contempt Sanction*

In an argument that corresponds to his claim in Assignment of Error 2(B), husband contends in Assignment of Error 4 that the circuit court "erred when it ordered, as part of the overall equitable distribution order, [husband] to pay [wife] the sum of $54,642, representing half the amount ordered by the [circuit court] to be restored to the loan balance" of the Guardian *608 policy. Husband contends that this additional award to wife was entered solely to enforce the August 7, 2012 contempt order. In our analysis of Assignment of Error 2(B), we have held *supra* that the August 7, 2012 contempt order was erroneous to the extent that it sanctioned husband for obtaining a $15,000 loan from the Guardian *608 policy's cash value before the February 8, 2011 *pendente lite* order was entered. Consistent with that holding, we also conclude that the $54,642 award to wife is erroneous to the extent that it includes the value of the same $15,000 that husband obtained on or about October 29, 2010.

In an equitable distribution proceeding, the "'function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property.'" Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)). While we must review the record here in the light most favorable to wife, since she prevailed at trial, see Chretien, 53 Va. App. at 202, 670 S.E.2d at 46, we disagree with wife's argument that the circuit court issued the additional award to her in its capacity of determining an equitable distribution of the marital property.

Indeed, the circuit court first mentioned this additional award to wife in its February 13, 2013 letter opinion *after* it had finished dividing the marital property, when it stated:

> Additionally, it appears that in a prior hearing before Judge Eason,[14] Dr. Campbell was ordered to restore $109,284 to his [Guardian *608 policy], *representing an unauthorized cash withdrawal during the pendency of this case*. It further appearing that no written order has been entered, notwithstanding Mr. Connor's professed efforts on behalf of Ms. Campbell to obtain entry, and that Dr. Campbell *has not complied with the order spoken by Judge Eason*, I will include half of that sum, or $54,642, in the following cash distribution to be paid to Ms. Campbell.

(Emphasis added). Significantly, the circuit court in its letter opinion did not ground this additional $54,642 award to wife on any finding that husband had wasted or improperly dissipated marital assets. See Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988) ("[I]n the case of [marital] assets wasted in anticipation of separation or divorce, . . . equity can only be accomplished if the party who last had the funds is held accountable for them."). On the contrary, when discussing the tenth equitable distribution factor under Code § 20-107.3(E), which pertains to the improper dissipation of marital funds, the circuit court found, "No issue was raised during the hearing and no evidence of such was introduced or proffered."

Thus, when read in context, the circuit court's additional $54,642 award to wife in the February 13, 2013 letter opinion was not based on the equities of the case – but instead was entered to enforce the earlier contempt sanction against husband for violating the February 8, 2011 *pendente lite* order. The plain language of the September 27, 2013 final equitable distribution order reflects the same rationale by the circuit court for the additional $54,642 award to wife. The final equitable distribution order simply states, "In addition, Husband shall pay to

---

[14] It appears that Judge Carl Edward Eason Jr. actually presided at the May 22, 2012 contempt hearing and entered the August 7, 2012 contempt order.

- 16 -

Wife the sum of $54,642, representing half of the amount orally entered by Judge Eason to be restored to the loan balance of [the Guardian *608] policy."[15]

Consistent with the plain language of the February 13, 2013 letter opinion and the September 27, 2013 final order, we must conclude that the circuit court entered the additional $54,642 award to wife solely to enforce the prior contempt sanction against husband for violating the February 8, 2011 *pendente lite* order. However, for the reasons explained *supra*, the circuit court abused its discretion when it sanctioned husband for obtaining a $15,000 loan from the Guardian *608 policy's cash value in October 2010 – when no *pendente lite* order had yet been entered. Accordingly, we must reverse the additional $54,642 award to wife – to the extent that it holds husband responsible and punishes him for obtaining the $15,000 loan from the Guardian *608 policy's cash value (as well as interest and other fees corresponding to that particular loan).

### D. EQUAL DIVISION OF MARITAL ASSETS

In his third assignment of error, husband argues that the circuit court abused its discretion by presuming an equal division of the marital assets for purposes of equitable distribution. See Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986) (holding that there is no statutory presumption of equal distribution of marital property). Husband relies on a statement by the circuit court in its February 13, 2013 letter opinion, where it explained, "I have specifically considered the statutory factors, none of which militate against a[] generally equal division of the property."

---

[15] This language cannot be read to pertain to equitable distribution merely because it appears in the final equitable distribution order. That order addresses other items that do not specifically concern equitable distribution, such as the $10,000 award of attorneys' fees and costs to wife based on "the significant income disparity and resources" of the parties.

However, in Hamad v. Hamad, 61 Va. App. 593, 739 S.E.2d 232 (2013), this Court held:

> As we have often said, "Virginia law does not establish a presumption of equal distribution of marital assets." Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (citation omitted). A trial court "need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines." Robbins v. Robbins, 48 Va. App. 466, 480-81, 632 S.E.2d 615, 622 (2006). Instead, a trial court "must consider each of the § 20-107.3(E) statutory factors and only then determine what relative weight to assign to each." Id. at 481, 632 S.E.2d at 622. "What weight, if any, to assign to this or that factor in the overall decision lies within the trial court's sound discretion." Id. (brackets omitted).

Hamad, 61 Va. App. at 606, 739 S.E.2d at 239; see Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998) ("It is within the discretion of the court to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3(E) require."); see also White v. White, 56 Va. App. 214, 221 n.3, 692 S.E.2d 289, 292 n.3 (2010); Rinaldi v. Rinaldi, 53 Va. App. 61, 76, 669 S.E.2d 359, 366 (2008).

Here, the circuit court found in its February 13, 2013 letter opinion that an equal division of the marital assets was appropriate "[i]n light of the circumstances in this case" – while also noting correctly that it had "specifically considered the statutory factors" in Code § 20-107.3(E). The circuit court's decision here "reflects a reasonable and equitable judgment, fully consistent with the legal principles governing this case." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239; see Pommerenke v. Pommerenke, 7 Va. App. 241, 250, 372 S.E.2d 630, 634 (1988) ("It is apparent from the record in the present case that, based on the evidence presented, the trial court adopted an initial assumption that the equities and rights and interests of each party in the marital property were equal as its beginning point in that determination."). Viewing the entire record in the light most favorable to wife, since she was the prevailing party below, the record simply does not support husband's allegation that the circuit court applied a "presumption of an equal division" of marital assets that would run contrary to this Court's decision in Papuchis.

- 18 -

E. SPOUSAL SUPPORT AWARD

In his seventh assignment of error, husband challenges the circuit court's decision to award wife $3,000 per month in spousal support until husband's private disability insurance policy expires when husband reaches age-sixty five. "The determination whether a spouse is entitled to support, and if so how much, is a matter within the discretion of the [circuit] court," Dukelow v. Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986), and this Court will reverse the circuit court's decision only if it "is plainly wrong or without evidence to support it," Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (internal quotation marks and citation omitted).

*1. Fault Ground*

In Assignment of Error 7(A), husband argues that the circuit court erred in awarding wife spousal support because, according to husband, wife was at fault for the dissolution of the marriage because "Wife deserted the Husband." See Code § 20-107.1(E) ("The court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other ground for divorce under the provisions of subdivision (3) or (6) of § 20-91 or § 20-95."). In their pleadings filed in the circuit court, wife and husband both alleged fault grounds for divorce against the other party. However, the circuit court ultimately declined to find either party at fault and instead awarded wife a divorce on the ground that the parties had "lived separate and apart without any cohabitation and without interruption for one year."[16] Code § 20-91(A)(9)(a). While the circuit court also looked at whether there exist fault grounds under Code § 20-107.1(E) that would bar or reduce spousal support when it considered

---

[16] On appeal, husband has not challenged in any of his assignments of error the circuit court's actual decision not to base its decree of divorce on the fault ground alleged by husband in his circuit court pleadings.

"the circumstances and facts which contributed to the dissolution of the marriage,"[17] id., the circuit court permissibly used its discretion, after doing so, to make a spousal support award in this case. See Dukelow, 2 Va. App. at 27, 341 S.E.2d at 211.

## 2. *Imputation of Income*

In Assignment of Error 7(B), husband challenges the circuit court's decision not to impute any income to wife for purposes of determining spousal support. Husband argues that the circuit court erred in finding that wife realistically could not return to the field of child psychiatry in the foreseeable future. Husband also argues that the circuit court erroneously disregarded wife's own evidence that wife could earn $40,000 to $60,000 per year as a high school teacher, a pharmaceutical sales representative, or a community college professor.

> In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed. Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must consider the parties' earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children.

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 783-84 (1999) (internal quotation marks and citations omitted). "[T]he party moving the court to impute income has the burden of proving that the other party is voluntarily foregoing more gainful employment." Id. at 102, 515 S.E.2d at 784. Here, wife chose to return to work – three years before the parties separated – in a totally different field of work, interior design, where she made very little money – rather than try to continue to work in the field where she was trained, which was practicing medicine with a specialty of child psychiatry.

---

[17] In its February 13, 2013 letter opinion, the circuit court expressly found, "As to negative contributions to the marriage, there is no evidence of bad behavior or negative contributions to the marriage on the part of either spouse which would justify either the punitive imposition or withholding of spousal support."

Wife's vocational expert, Charles DeMark, testified that it would be very difficult for wife – despite the level of her training and experience as a practicing child psychiatrist prior to the birth of the parties' children – to obtain a Virginia license in child psychiatry[18] and to return to work in that field. The testimony of husband's vocational expert, Barbara Byers, conflicted with DeMark's testimony on that subject. The circuit court accepted DeMark's testimony, as it was entitled to do in its role as the factfinder. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). In light of the very deferential standard of review on appeal, we cannot say that the circuit court's finding that wife's "ability to return to her prior medical career is presently negligible" was plainly wrong or without evidence to support it. See Northcutt, 39 Va. App. at 196, 571 S.E.2d at 914.

However, we hold that the circuit court erred in declining to impute *any* income to wife because that decision was not supported by the record. According to the Supreme Court, one of the ways an abuse of discretion occurs is "when a relevant factor that should have been given significant weight is not considered" at all. Landrum, 282 Va. at 352, 717 S.E.2d at 137. In this case, there was no conflict in the evidence that wife could earn at least $40,000 to $60,000 per year as a high school teacher, as a pharmaceutical sales person, or as a community college professor.

In fact, DeMark, *wife's own expert witness*, testified:

> In my report of August 1, 2012, I talked about her options
> including work as a teacher, either in biology or chemistry research
> assistant or a pharmaceutical sales person or a college professor.
> And the college professor would be something in the, at the
> community college level. *And I'm offering those options based on*

---

[18] Wife previously practiced as a child psychiatrist in the state of South Carolina.

> *the idea of her training and education that she received at the*
> *different universities where she studied.*

(Emphasis added).

Furthermore, wife admitted during cross-examination that DeMark had opined in his vocational report that wife had an earning capacity of between $40,000 to $60,000 per year. Therefore, wife presented evidence *during her own case-in-chief* that she could obtain employment in several different fields and that she could earn between $40,000 to $60,000 per year. Given the uncontroverted record on this issue, the circuit court's finding that it was "speculative at best" that wife could "acquire employment providing an income superior" than the negligible revenue produced by wife's interior design business was plainly wrong. That finding lacked any evidentiary support.[19]

Our analysis here does not conflict with this Court's important decision in Brandau v. Brandau, 52 Va. App. 632, 640, 666 S.E.2d 532, 536 (2008), in which this Court rejected an argument that "a stay-at-home spouse capable of working must go to work immediately after the divorce trial or face a judicially imposed imputation of income." Brandau is a key decision addressing whether or not to impute income to a party. However, the circumstances here are very different from those in Brandau – where the evidence showed that Mrs. Brandau had been a

---

[19] During oral argument before this Court, wife's counsel suggested that the circuit court, acting as the factfinder here, could have simply disregarded DeMark's testimony concerning wife's ability to work, as well as wife's admission that DeMark had opined in his report that wife had an earning capacity of $40,000 to $60,000. It is the factfinder's role, of course, "'to make judgments on the credibility of the witnesses'" who testify. Elliott v. Commonwealth, 267 Va. 396, 423, 593 S.E.2d 270, 287 (2004) (quoting Ohler v. United States, 529 U.S. 753, 764 (2000)). Here, however, *both* of the parties' vocational experts testified that wife was quite marketable based on her education and experience – and that wife *could* obtain employment. Wife also admitted that her own expert, DeMark, opined that she could earn $40,000 to $60,000 per year. In short, there was essentially *no conflict* in the evidence on the issue of whether wife was able to find a job and earn at least $40,000 to $60,000 per year.

stay-at-home mother for over twenty years, had only a high school education, and had an earning capacity of at most $6 to $8 per hour.  Id. at 640, 666 S.E.2d at 537.

By contrast, wife here holds a M.D., with a specialty in child psychiatry, and she has practiced as a child psychiatrist – including in the early part of their marriage.  Whereas husband's declining health renders him now unable to work at all, wife is in good health – and her prior education and experience in the field of child psychiatry provide wife with many employment options other than returning to child psychiatry, as DeMark noted at trial.[20] Moreover, it is especially significant to our analysis that *wife actually began working again in 2007* when she chose to start her own interior design business.  Although that business certainly was not lucrative, wife's return to work a full three years before the separation of the parties makes this case very different than Brandau – where Mr. Brandau argued that Mrs. Brandau should be required to obtain employment after she had been a stay-at-home spouse and mother for essentially the entirety of their twenty-two-year marriage.

Based on the undisputed evidence, including the opinion of wife's own expert, that wife could earn $40,000 to $60,000 per year in several different fields and based on wife's own decision to return to work three years before the parties' separation, we conclude that the circuit court abused its discretion when it declined to impute any income at all to wife for purposes of determining spousal support to her.  Accordingly, we remand the matter to the circuit court for additional factfinding by the circuit court on that issue consistent with this opinion.

### 3.  Credit for Overage Caused by Nunc Pro Tunc Spousal Support Order

In Assignment of Error 7(C), husband argues that the circuit court "erred, when upon entry of the Spousal Support order *nunc pro tunc* to February 21, 2013, it failed to credit the

---

[20] For example, DeMark testified that wife's background is especially useful if she were to teach chemistry or biology, given that "school systems are willing to hire" teachers in the sciences "with the idea that they would secure the necessary license and certification."

husband with the overage created by his payment of the *pendente lite* amount of spousal support between the months of February and June 2013 (totaling $6,590.00)."[21]

The circuit court's final order setting spousal support awarded wife $3,000 per month in spousal support. At the time of the final order's entry, husband was still obligated to pay a greater amount of temporary spousal support -- $4,318 per month – under the terms of the *pendente lite* order. See Ipsen v. Moxley, 49 Va. App. 555, 564-65, 642 S.E.2d 798, 802 (2007) (explaining that a *pendente lite* order's requirements remain in effect during the pendency of the divorce case). However, the final spousal support award of the lesser amount of $3,000 to wife was actually entered *nunc pro tunc* to February 21, 2013. See Black's Law Dictionary 1096 (7th ed. 1999) (defining "*nunc pro tunc*" as "[h]aving retroactive effect"). Due to the circuit court's entry of the final spousal support order *nunc pro tunc* to February 21, 2013, husband's spousal support obligation became $3,000 per month (not $4,318 per month) effective retroactively to February 21, 2013.

Accordingly, although husband is not entitled to a reimbursement for his overpayment of $1,318 per month due to the retroactive effect of the *nunc pro tunc* order, we agree with his argument that he is entitled to a future spousal support credit totaling $6,590 for five months of such overpayments. See Nordstrom v. Nordstrom, 50 Va. App. 257, 267 n.2, 649 S.E.2d 200, 205 n.2 (2007).

F. Circuit Court's Award of Wife's Attorney's Fees and Costs

In his sixth assignment of error, husband challenges the circuit court's decision to award wife $10,000 in attorney's fees and costs. Under settled law, "after considering the circumstances of the parties and the equities of the entire case, a trial court may exercise its discretion and issue an award of attorney's fees and costs that is reasonable under all of the

---

[21] Even though the circuit court's final spousal support was entered on September 27, 2013, husband does not request a credit for overpayments beyond June 2013.

circumstances revealed by the record." Mayer v. Corso-Mayer, 62 Va. App. 713, 734, 753 S.E.2d 263, 273 (2014).

Here, the circuit court awarded $10,000 in attorney's fees and costs to wife specifically "[i]n light of the significant income disparity and resources" of the parties. However, we have concluded that the circuit court's decision not to impute any income to wife under the particular circumstances of this case was reversible error. Accordingly, we must also reverse the circuit court's award of attorney's fees and costs to wife – because the parties' respective incomes and available resources[22] must now be reevaluated by the circuit court on remand.

### G. APPELLATE ATTORNEY'S FEES AND COSTS

On brief, wife asks this Court to "award Wife her attorney's fees and costs incurred in defending these matters on appeal or alternatively remand the issue of attorney's fees to the [circuit] court for determination." See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996) ("The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."). We deny wife's request. Husband has prevailed on several of his assignments of error, while others were "erroneous but nonetheless fairly debatable." Brandau, 52 Va. App. at 643, 666 S.E.2d at 538. Under these circumstances, for this Court to assess attorney's fees and costs against husband in the litigation of this appeal would be wholly inappropriate.

### III. CONCLUSION

We affirm most of the circuit court's rulings that husband has challenged in this appeal – in which husband has raised seven assignments of error and several sub-assignments of error.

---

[22] We note the circuit court's finding in its February 13, 2013 letter opinion that wife at that time had "an expectancy in her deceased mother's estate, which is presently in litigation, but has a potential value of over $400,000."

However, we reverse the circuit court's decision to sanction husband for obtaining a $15,000 loan from the Guardian *608 policy's cash value. That $15,000 loan was obtained on or about October 29, 2010 – well before the entry of the February 8, 2011 *pendente lite* order – and, therefore, could not serve as the basis for a finding that husband was in contempt of the *pendente lite* order. The circuit court's $54,642 award to wife – which the circuit court entered to enforce the contempt sanction – is reversed to the extent that it included the amount of that $15,000 loan (and any interest and other charges related to that loan).

In addition, we reverse the circuit court's decision not to impute any income at all to wife because wife's own evidence (through the opinion of her expert) established that she could earn at least $40,000 to $60,000 per year – and given the fact that wife actually returned to work three years before the parties separated. We also reverse the circuit court's decision not to award husband a $6,590 credit toward future spousal support payments, in light of the $6,590 overage caused by the *nunc pro tunc* entry of the final spousal support order. Furthermore, we reverse the circuit court's award to wife of $10,000 in attorney's fees and costs, which the circuit court specifically based on the "significant income disparity and resources" of the parties. On remand, when the circuit court considers the amount of income to impute to wife, the circuit court will also have an opportunity to reevaluate whether an award to wife of attorney's fees and costs would be appropriate under all of the evidence and circumstances before the court.

Affirmed in part, reversed
and remanded in part.
